(87 South. 257)

No. 24310.

BARROW v. DUPLANTIS et al.

In re BARROW.

(Dec. 11, 1920.   Rehearing Denied Jan. 31, 1921.)

*(Syllabus by Editorial Staff.)*

1. **Injunction** ⬤➞183—**Where a suspensive appeal from an order dissolving an injunction was denied and mandamus issued to compel grant of appeal, the injunction was reinstated.**

Where defendants obtained an order for dissolution of trial court's injunction on bond, from which order a suspensive appeal by the plaintiff was refused, but on his application a peremptory writ of mandamus to compel the granting of it was made by the Supreme Court, the effect was to reinstate the injunction and invest it with a character of an order of this court.

2. **Injunction** ⬤➞230(1)—**Allegations enlarging pleadings in injunction case not considered in contempt proceedings.**

In a contempt proceeding against the judge and another, whether a second injunction clashes with the first must be decided from comparing them, and whatever allegations in the petition to this court tend to amplify or enlarge the proceedings upon which the injunctions were predicated, or to extend the scope of either injunction, must be disregarded, while partnership articles made a part of the petition upon which the injunction said to have been violated was granted must be considered.

3. **Injunction** ⬤➞8—**Second injunction held a violation of the first.**

A second injunction, preventing a manager appointed by the administrator of a decedent in accordance with the partnership agreement from shipping manufactured sugar to market, *held* an unwarranted interference with his conduct and in violation of a former injunction, preventing such administrator from interfering with his operations.

4. **Injunction** ⬤➞232, 233—**Where parties violating injunction acted in good faith costs only should be imposed.**

Where respondents strongly and in all sincerity insist that a second injunction was not in violation of the first, and disclaim having in-

tended to act in contravention of or disregard the court's order, *held*, that the case was not one for infliction of punishment as for contempt, but since the order was violated the respondents should pay the costs.

Action by Robert Ruffin Barrow against Caliste A. Duplantis and others. In the matter of plaintiff's application for writs of certiorari, prohibition, and mandamus. Rule to Caliste A. Duplantis, individually, and as administrator of the succession of Henry Clay Duplantis, deceased, and to Hon. H. M. Wallis, Jr., Judge of the District Court, to show cause why they should not be punished for contempt. Respondent judge directed to set aside an order of injunction, whereupon respondents will stand acquitted of contempt. See, also, 147 La. 461, 85 South. 205; ante, p. 149, 86 South. 718.

Harris Gagne, of Houma, for applicant.

Caillouet & Caillouet, of Thibodaux, for C. A. Duplantis.

PROVOSTY, J.   In this matter the Hon. H. M. Wallis, Jr., judge of the Twentieth judicial district court in and for the parish of Terrebonne, and Caliste A. Duplantis, individually and as administrator of the succession of Henry Clay Duplantis, deceased, have been ruled by this court to show cause why they should not be punished for contempt for violation of an order of this court.

The recital of the matter, beginning at the beginning, is that the complainant, Robert Ruffin Barrow, and the late Henry Clay Duplantis, of whose succession the respondent Caliste A. Duplantis is administrator, entered into a partnership (quoting from the articles of partnership) "for the purpose of cultivating in sugar cane, corn and other products of the country the Myrtle Grove plantation of the said Barrow."

The articles of partnership provided that—

"The name and style of said firm shall be Barrow & Duplantis, in which name all the business of said plantation shall be carried on and contracted.

"That the said Duplantis shall exercise and maintain a general and strict superintendence over the plantation operations and shall devote his best energies and skill and devote exclusive time to their successful prosecutions. * * *

"The crops of sugar and molasses when made shall be equally divided between the parties on the plantation, should they see proper to do so, and each partner, in case of division of the crops, shall be free and at liberty to ship said crops to whosoever he pleases, provided there are no joint notes or obligations to be met; all losses should be borne equally by the parties.

"All buildings, repairs, and improvements made on or for said Myrtle Grove plantation and machinery added during the term of said partnership shall be made at the cost and expense of the partnership, each partner paying half, and the same to remain the property of said plantation at the expiration of the partnership free of cost or expense to said Barrow, unless otherwise agreed in. writing.

"In case of death of either partner the partnership shall continue to the expiration of its full term, unless sooner dissolved by mutual consent between the heirs of the deceased partner and the surviving partner. In case of death of said Duplantis, his heirs and legal representatives shall furnish a man to take his place, subject to Barrow's approval, the heirs or legal representatives of said Duplantis being bound to pay the wages or services of said manager, and the said Barrow agrees and binds himself to continue the partnership to its full term with the said manager so selected to replace said Duplantis. * * *

"The said Duplantis shall keep a faithful account of the plantation expenses."

The partnership was continued for many years by repeated renewals, or extensions, and, Duplantis having died, was continued with his heirs; and the latter furnished a man to take the place of their deceased father in accordance with the terms of the articles of partnership. By the terms of the last renewal the partnership was to expire at the end of the year 1920.

In January of that year, Barrow filed a suit asking that the partnership be dissolved and its affairs settled, and that he be appointed liquidator to effect a settlement, and to conduct meantime the affairs of the partnership.

In the petition in said suit, after alleging the facts hereinabove stated, and that Caliste A. Duplantis, a son and one of the heirs of the deceased partner, had been appointed administrator of the succession of the said deceased partner, he alleged, further as follows:

"XI. Petitioner shows that in approving the said manager he did so under the impression that the said manager was appointed as the representative of the partnership in accordance with the plain terms and meaning of the said article 14.

"XII. That he remained under this impression until January 16, 1920, when the said Dillard informed petitioner that he had been employed by the said Caliste A. Duplantis, administrator, as the personal representative of the heirs of the late H. C. Duplantis, that he had been required by the said Caliste A. Duplantis to sign a written agreement of employment by which he was to take orders from the said administrator or the heirs of Duplantis, and that he was to be subject to discharge by them.

"XIII. Petitioner shows that he cannot consent to any such interpretation of article 14 of said articles of copartnership; that by said article he agreed to conduct the partnership, after the death of the said Duplantis, with the said manager enjoying the same authority that had been exercised by the late H. C. Duplantis.

"XIV. That the idea of the manager being the personal representative of one party of the partnership to the negation of the other is intolerable, and makes a continuation of the partnership impossible.

"XV. Petitioner shows that the intent of article 14 of said articles of partnership is that the manager once selected by the heirs of H. C. Duplantis, and approved by your petitioner, then takes the place in the copartnership lately held by the said H. C. Duplantis, and with him your petitioner is to continue the partnership until the end of its terms.

"XVI. Petitioner shows that the said Caliste A. Duplantis, administrator, is a storekeeper, operating a general country store just below the lower line of the Myrtle Grove plantation.

"XVII. That he sells to the hands of the plantation on terms of credit.

"XVIII. That he had been in the habit of paying off the hands at his store, and deducting from their wages due by the plantation the amounts he claimed due him by them.

"XIX. That the hands frequently complain that they do not owe the accounts so deducted by him from their wages.

"XX. That the partnership has no interest in the said store nor control over it, but the ill humor of the customer is made to react and demoralize the labor of the plantation.

"XXI. That it is necessary that the manager pay off the said laborers in order to properly control and direct them, and that the laborers be permitted to spend their money and pay their debts as they please.

"XXII. That unless the manager does this, he impairs his influence with his hands, and their efficiency is correspondingly reduced.

"XXIII. Petitioner shows that he notified the said manager that he must pay off the hands on the plantation and not at the store of Mr. C. A. Duplantis, and that he must pay them off himself.

"XXIV. Petitioner shows that the said manager informed him that when he conveyed to Mr. Caliste A. Duplantis these instructions of petitioner, that the said Duplantis insisted that said manager must do no such thing, and that if he did the heirs of Duplantis would discharge him."

On the 11th of February, 1920, the court handed down a decision refusing to appoint a liquidator.

On March 19, 1920, Barrow, by a supplemental petition in his suit, asked that the property of the partnership be sequestered, and that a sequestrator, or receiver, be appointed to have charge of the partnership affairs.

On April 5, 1920, the court refused to grant this prayer.

On June 19, 1920, the said Caliste A. Duplantis, individually, as heir of H. C. Duplantis, and in his capacity of administrator of the latter's succession, and the other heirs of the latter filed their answer in the said suit. This answer is too long for any detailed statement to be given of it here. In substance, in so far as needing presently to be stated, it amounted to a contention that Josh Dillard, the man furnished by the heirs of the deceased partner to take his place, was not the fully empowered agent of the partnership to have charge of its affairs as manager, not subject to control by either partner, but was merely an agent of the heirs of H. C. Duplantis; that Caliste A. Duplantis, as administrator of the succession of H. C. Duplantis, had full right to participate in the management of the affairs of the partnership to the extent that he was claiming the right to do.

The said suit being untried and still pending, Barrow filed the following petition:

"The petition of Robert Ruffin Barrow, domiciled in the parish of Terrebonne, state of Louisiana, with respect represents:

"(1) That in the above entitled and numbered cause of the docket of this court, on January 29, 1920, he petitioned for the dissolution and liquidation of the firm of Barrow & Duplantis, an ordinary copartnership, composed of himself, as surviving copartner of the late firm of Barrow & Duplantis, and the heirs of his deceased partner, as will be seen by plaintiff's petition, in the said above entitled and numbered cause, made part hereof.

"(2) That on June 23, 1920, the heirs of said H. C. Duplantis filed answers to the said petition, which are made part hereof.

"(4) That the heirs, except the said Caliste A. Duplantis, in paragraph 20 of their said answer, allege: 'That in answer to the declaration of plaintiff made in article 26 of the petition, respondents aver and show that Caliste A. Duplantis, administrator of the estate of H. C. Duplantis, is the legal representative of the said estate and of the heirs and legal representatives of the late H. C. Duplantis, and as such is fully authorized, and has an equal right with plaintiff, to "handle" the partnership assets for and in the business of the partnership.'

"(5) That the said Caliste A. Duplantis, individually and as administrator of the estate of the late H. C. Duplantis, says in his answer, under paragraph 20, as follows: 'That, in answer to plaintiff's complaint in article 26 of the petition, respondent avers and shows that, as the legal representative of the Duplantis interest in the partnership of Barrow & Duplantis, and of the heirs and legal representatives, he has an equal right with the said Robert R. Barrow to "handle" the partnership assets for and in the business of the partnership; but, nevertheless, he is willing to abide by the understanding had with the said Barrow, to let him sign checks, or arrange for the same, to meet the payrolls and other claims against the

partnership; respondent must insist, however, on his legal right, as such legal representative, to draw, whenever necessity arises, in an emergency, as was the case on January 17, 1920, noted in the preceding article 19 of this answer.'

"(6) Petitioner shows that he denies any such authority or right, as claimed by and for the said Caliste A. Duplantis, as set out in paragraph 20 of their respective answers.

"(7) Petitioner shows that the said Caliste A. Duplantis insists on exercising equal rights and authority with your petitioner, in the said partnership affairs of the said firm of Barrow & Duplantis, despite your petitioner's protests against his said interfering.

"(8) Petitioner shows that Josh Q. Dillard, the duly selected, appointed, and installed manager of the partnership of Barrow and Duplantis, in the exercise of his duty and authority, ordered and directed certain ditching on the plantation of Barrow & Duplantis, during the month of August, 1920.

"(9) That the said Caliste A. Duplantis notified the said Dillard to cease said ditching.

"(10) That despite the said notice and interference, the said manager insists that the said ditching is necessary or advantageous to the welfare of the said plantation.

"(11) That the said Caliste A. Duplantis, who is the bookkeeper of the firm of Barrow & Duplantis, and who has been in the habit of paying off the pay rolls of the said plantation has notified the said manager that if the time of the said laborers for the said ditching is placed on the said pay roll he will scratch it off, refuse to pay the said laborers, and refuse to enter on the books of the partnership the said pay roll, as made by the said manager.

"(12) Petitioner shows that the interference with the said manager by the said Caliste A. Duplantis is illegal, unlawful, and to the great detriment and injury of the plantation affairs.

"(13) Petitioner shows that the firm of Barrow & Duplantis have a balance to their credit in the Bank of Houma, for the use and benefit of the said partnership affairs, largely in excess of $2,000.

"(14) That the said Caliste A. Duplantis insists on his right, as administrator of the estate of H. C. Duplantis, to draw checks against the said account at the said bank.

"(15) That the said Bank of Houma persists in cashing checks drawn against the said partnership fund by the said Caliste A. Duplantis, administrator of the estate of H. C. Duplantis.

"(16) Petitioner shows that the said Caliste A. Duplantis, individually, or as the administrator of the estate of H. C. Duplantis, is without right to interfere with the manager, Josh Dillard, or to draw checks against the partnership funds in the Bank of Houma.

"(17) Petitioner shows that the arbitrary and illegal acts of the said Caliste A. Duplantis are injurious to your petitioner, both individually and as a member of the firm of Barrow & Duplantis, and that he is entitled to a writ of injunction, enjoining and prohibiting the said Caliste A. Duplantis from interfering with the management of Josh Dillard, as manager of the Myrtle Grove plantation, and from drawing against the partnership funds of Barrow & Duplantis.

"(18). Petitioner further shows that he is entitled to a writ of injunction enjoining and prohibiting the Bank of Houma from paying out any of the funds of Barrow & Duplantis, on draft drawn against them by the said Caliste A. Duplantis.

"(19) Petitioner shows that he has attempted to have the partnership affairs of Barrow & Duplantis turned over to a liquidator, as is shown by the proceedings in the above entitled and numbered cause.

"(20) That this ordinary and usual proceeding in the premises having been denied by the court, petitioner has no way to protect his rights of property from the arbitrary and illegal acts of the said Caliste A. Duplantis, except by application to this court for the writs of injunction here sought, pending final hearing herein.

"Wherefore, premises considered, petitioner prays that Caliste A. Duplantis, individually and as administrator of the estate of H. C. Duplantis, and the Bank of Houma, through its proper officers, be duly cited hereto; that in the meantime preliminary injunction issue, enjoining and prohibiting the said Caliste A. Duplantis from in any wise interfering with the management of Josh Dillard, as manager of the Myrtle Grove plantation, for the firm of Barrow & Duplantis, and prohibiting and enjoining him from drawing against the partnership funds to the credit of the said firm in the Bank of Houma. Petitioner further prays that a preliminary injunction issue, enjoining the Bank of Houma, its officers or employees, from paying out any of the funds of the firm of Barrow & Duplantis upon the order of the said Caliste A. Duplantis, individually or as administrator of the estate of the late H. C. Duplantis. Petitioner further prays, after the legal delays and due proceedings had, that there be judgment perpetuating the said injunction, and for costs and for general and equitable relief."

[1] Upon this petition the court made the following order:

"Order.

"Considering the foregoing petition, let writs of injunction issue herein, enjoining and prohibiting Caliste A. Duplantis, individually and as administrator of the estate of H. C. Duplantis, from in any wise interfering with Josh Dillard, as manager of the Myrtle Grove plantation of Barrow & Duplantis, and from drafting against the funds of the said Barrow & Duplantis on deposit in the Bank of Houma, and let the said Bank of Houma, its officers, agents, or employees, be enjoined and prohibited from paying out any of the funds to the credit of Barrow & Duplantis upon the order of the said Caliste A. Duplantis, either individually or as administrator of the estate of H. C. Duplantis, upon plaintiff's furnishing bond in the sum of $2,000, conditioned according to law and as the law directs."

This injunction having issued, the defendants in injunction obtained an order for its dissolution on bond.

Barrow applied for a suspensive appeal from that order, and, this appeal having been refused, he applied to this court for a mandamus to compel the granting of it; and the mandamus thus applied for was eventually made peremptory by judgment of this court.

The operation of this judgment was, in effect, to reinstate the injunction and to invest it with the character of an order of this court. This judgment was of date November 3, 1920.

[2] On the 9th of November, 1920, the said Caliste A. Duplantis, individually, as heir of his deceased father, and in his quality of administrator of the latter's succession, applied to the respondent judge for an injunction to prevent the said Josh Dillard, manager of the plantation, from shipping to market the sugar now being manufactured on the said plantation; and the respondent judge granted the injunction.

Thereupon the complainant Barrow applied to this court for a rule on the said Duplantis and the respondent judge to show cause why the said injunction should not be held to be a violation of the injunction forbidding the said Caliste A. Duplantis from interfering with the management of the said plantation and with the affairs of the partnership.

In the petition applying for this rule the following allegations are made:

"(6) Petitioner shows that this injunction is a flagrant violation of the previous issued by the said court, as well as of the prohibitory order herein granted by this honorable court, and destroys absolutely the effect of the first injunction to be appealed to this court, as well as the prohibitory order already herein issued.

"(7) Petitioner shows that by reason of the unique condition existing in the partnership affairs of Barrow & Duplantis, by reason of the death of H. C. Duplantis, articles 13, 14, and 17 of the contract of partnership and lease, existing between your petitioner and said H. C. Duplantis, the status provoked by the second injunction is disastrous to all interests.

"(8) Petitioner shows that besides said manager being engaged at the present time in the grinding and manufacturing into sugar at its Myrtle Grove house cane grown by the partnership on the Myrtle Grove plantation, he is also grinding cane and manufacturing sugar therefrom which is bought from cane growers of the surrounding vicinity, which the firm of Barrow & Duplantis is under contractual obligations to purchase.

"(9) That the price of this cane is fixed by agreement between purchaser and seller at 90 cents per ton of cane, for every cent per pound of sugar that y. c. sugars are sold for on the New Orleans Exchange, during the week the cane is delivered. The said price of sugar being the weekly average of all sales of y. c. sugars made during that week.

"(10) That hence the sale of the sugar made from the purchased cane must necessarily be sold as it is manufactured, and the sellers of the cane settled with from the proceeds thereof, or else the firm becomes a speculator in sugar.

"(11) That with the sugar market falling as much as 10 cents per pound within the past 60 days, the hazard of the gambler is apparent and great.

"(12) Petitioner shows that the firm will manufacture from cane thus purchased this season approximately 1,000,000 pounds of sugar.

"(13) That a decline in the price of sugar to the normal pre-war price will mean a loss of $30,000, if the cane is settled for at the pres-

ent price of sugar, and the sugar is held, and the normal pre-war price is reached.

"(14) That under the firm's agreement with its cane sellers, the firm must settle every two weeks, in cash, for the cane purchased.

"(15) That the firm has on hand, to its credit, in bank, probably $30,000, but it has outstanding obligations which, added to the grinding pay roll, will exceed this amount.

"(16) That exclusive of these recognized obligations of the firm, it has potential obligations aggregating over $20,000, represented by a suit pending in the Twentieth judicial court for a fuel bill claimed by the Terrebonne Gas Company for approximately $3,000, as is shown by the records of the Twentieth judicial district court, and a claim of $15,344.87, claimed by the United States government as additional excess profits tax, as is shown on page 21 of the printed petition for relief addressed to the Appeal Board Commissioners of Internal Revenue, United States of America, filed herewith.

"(17) Petitioner shows that the bank credits of the firm must be held to liquidate these debts and potential debts of the firm, and cannot be honestly diverted to pay for cane purchased by the firm, and certainly not if the sugar is to be manufactured therefrom is not to be sold as manufactured.

"(18) Petitioner shows that he is not sure that he may not be held liable, in solido, for the payment of this cane, since the business of the firm in this regard may be held commercial rather than agricultural.

"(19) Petitioner shows that without the sale of this sugar the firm cannot pay for the purchased cane.

"(20) That the object of the injunction issued on November 9, 1920, is solely for the illegal purpose of compelling the use and diverting from their legitimate destination the cash on hand, and to use it for the payment of the said purchased cane.

"(21) Petitioner shows that the infamy of the allegations of articles 13, 14, 15, 16, and 17 of the attached petition, upon which the illegal injunction issued, in which Josh Dillard, who is at least the peer of those who thus malign him, is apparent, when it is known:

"(1) That the steamer Houma, on its return trip to New Orleans, generally reaches the Myrtle Grove sugar house 'in the nighttime,' and the sugar is hence usually loaded 'in the nighttime.'

"(2) That for years the firm has shipped all of its sugar by the steamer Houma.

"(3) That the sugar of the firm, for probably 15 years, has been consigned to 'Mr. E. A. Rai-

nold, exclusively, sugar broker, at New Orleans,' and sold by him for account of the firm.

"(4) That Josh Dillard, and no one else, has authority to ship the sugar of the firm.

"(22) Petitioner shows that Caliste A. Duplantis and the heirs of H. C. Duplantis have only a residuary interest in the partnership property of Barrow & Duplantis, after the creditors of the said firm have been paid and discharged.

"(23) That it was for this very reason that article 14 of the articles of copartnership was entered into, and the injunction now issued is subversive of this very contractual protection of the firm against the heirs of a deceased partner.

"(24) That the petition for injunction is malicious; that the bond required is vile and utterly inadequate, and the injunction granted as well as the petition are in contempt of the staying order of this court issued herein."

The matter to be considered by this court is as to whether the second injunction clashes with the first. That question had to be decided by the respondent judge from a comparison of the two injunctions, and of the allegations of the petitions respectively wherein they were prayed for, and it has to be decided by this court from the same data. It is not possible for the complainant Barrow to add any features to the injunction which he complains has been violated, nor to add anything to the allegations of either petition upon which the two injunctions were predicated.

Whatever allegations, therefore, contained in the said petition to this court may tend to amplify or enlarge the pleadings upon which the injunctions were predicated, or to extend the scope of either injunction, must simply be disregarded by this court.

The articles of partnership, however, were made part of the petition upon which the injunction said to have been violated was granted, and have to be taken into consideration along with the body of the petition.

[3] In these articles of partnership it was provided that the man to be furnished by the

heirs of the partner Duplantis in the event of the latter's death was to be so furnished "to take his place"; and it was provided that Duplantis should "exercise and maintain a general and strict superintendence over the plantation operations and devote his best energies and skill to their successful prosecution," and that he "should keep a faithful account of the plantation expenses." Very plainly, the functions here provided for embraced within their scope the conduct of all operations upon the plantation, including the shipment of its crops to market for sale. This power of administration was limited or qualified in only one respect, and that was that in the event there were no joint notes or obligations to be met the crops of sugar and molasses should be divided between the parties on the plantation, if the parties so desired. It was only in the event of the nonexistence of such joint notes or obligations that the partners were to be entitled to have a division of the products of the plantation in kind on the plantation; the fact of the nonexistence of such joint notes or obligations would therefore have had to be made to appear in order to justify an application by the respondent Duplantis to the courts to interfere with the manager of the plantation in his prosecution of the operations of the plantation.

The second injunction whereby Josh Dillard was prevented from shipping the manufactured sugar to market was therefore an unwarranted interference with his conduct of the operations of the plantation, and was a violation of the first injunction.

[4] Both respondents, however, strongly insist upon the opposite view, and, we believe, in all sincerity, and disclaim, at all events, having intended to act in contravention or disregard of the said order of this court. The case is not one, therefore, for the infliction of punishment as for contempt; but, since we hold that the order of this court was being in fact violated, the present rule for contempt must be held to have been properly sued out, and the costs thereof be borne by the respondents.

The respondent judge is therefore directed to set aside the said order of injunction granted by him on November 9, 1920, and upon the said order being canceled the respondents will stand acquitted of contempt; and it is ordered, adjudged, and decreed that the respondents pay the costs of this court.